**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MARCO ANTONIO ALFEREZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-215** |
| | § | **EP-10-CR-2736-KC-1** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent**. | § | |

**<u>ORDER</u>**

On this day, the Court considered Petitioner's Verified Motion to Vacate and Set Aside

Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 126.[1] By the Motion, Petitioner challenges his

criminal sentence on the ground that he received ineffective assistance of counsel. For the

following reasons, the Court **DENIES** the Motion in part, but **RESERVES RULING** on one of

Petitioner's claims pending the outcome of an evidentiary hearing.

**I.      BACKGROUND**

In August 2010, federal law enforcement officers (the "Federal Agents") observed an

Internet Protocol address ("IP Address") sharing child pornography over a peer-to-peer file-

sharing service. *See* Plea Agreement, ECF No. 72, at 14-16; Mot. 7. The Federal Agents

identified Petitioner as the subscriber associated with the IP address. Plea Agreement 14; Mot. 7.

On September 20, 2010, the Honorable United States Magistrate Judge Richard P. Mesa

issued a warrant authorizing a search of Petitioner's residence and effects (the "Search

Warrant"), ECF No. 126-1, at 105-09. The Search Warrant authorized the Federal Agents to

conduct this search at any time on or before October 1, 2010, between the hours of 6:00 a.m. and

---

[1] For the purposes of this Order, all docket entries refer to the criminal case EP-10-CR-2736-KC-1 (the "Case").

1

10:00 p.m. *See* Search Warrant.

The Federal Agents executed the Search Warrant on September 21, 2010. Plea Agreement 16; Mot. 7. The Federal Agents found 98 commercially available child pornography videos on Petitioner's computer. *See* Plea Agreement 16-22; Mot. 7-8. These videos were located in Petitioner's shared directory, which thereby made them available for distribution over the internet. *See* Plea Agreement 16; Mot. 8. The Federal Agents also found 157 "hidden camera" videos produced by Petitioner himself that depicted hundreds of his minor students in various states of undress. *See* Plea Agreement 22; Mot. 8. The Federal Agents also found a video depicting Petitioner engaging in sexual relations with a fourteen-year-old female. *See* Plea Agreement 22-23; Mot. 8.

The Federal Agents interrogated Petitioner during the course of the search. Plea Agreement 23; Mot. 21. During the interrogation, Petitioner admitted to receiving, distributing, and producing child pornography. Plea Agreement 23; Mot. 22. Petitioner also admitted that "he was glad the [Federal A]gents caught him as he would be unable to stop otherwise." Plea Agreement 23; Mot. 22.

On October 20, 2010, a grand jury charged Petitioner in an indictment (the "Indictment"), ECF No. 21, with (1) sexual exploitation of children; (2) receipt and distribution of material involving the sexual exploitation of children; and (3) possession of material involving the sexual exploitation of children. Indictment 1.

Petitioner and the Government then entered into a Plea Agreement. In exchange for Petitioner pleading guilty to one count of sexual exploitation and one count of distribution of child pornography, the Government agreed to dismiss the remaining counts of the Indictment. *See* Plea Agreement 1. Pursuant to the Plea Agreement, Petitioner stipulated that the facts set

2

forth in the Plea Agreement's factual basis (the "Factual Basis") were true and correct. *See id*. at 4, 12, 14-23. Notably, Petitioner stipulated that the Federal Agents interrogated Petitioner only after advising him of his *Miranda* rights, and that Petitioner waived those rights before providing the incriminating statements identified above. *See id*. at 23.

On August 2, 2011, the Honorable United States Magistrate Judge Norbert J. Garney held a plea hearing in the Case (the "Plea Hearing"). *See* Plea Hr'g Tr., ECF No. 130. Judge Garney engaged in a colloquy with Petitioner and ensured that his guilty plea was knowing and voluntary. *See id*. at 2-16. Petitioner affirmed to the Court that the information in the Factual Basis was true and correct, including that he made incriminating statements to the Federal Agents only after being advised of his *Miranda* rights and opting to waive them. *See id*. at 14-16. Judge Garney then accepted Petitioner's guilty plea. *See id*. at 16.

Following the Plea Hearing, a United States Probation Officer prepared a presentence investigation report in the Case (the "PSR"), ECF No. 84. The Probation Officer determined that Petitioner's total offense level was 49. *See* PSR ¶ 2936. However, because the United States Sentencing Guidelines provide that "[a]n offense level of more than 43 is to be treated as an offense level of 43," U.S.S.G. Ch. 5 Pt. A, App. Note 2 (2011),[2] the Probation Officer adjusted Petitioner's effective total offense level to 43. *See* PSR ¶ 2936 Because Petitioner had not previously been convicted of a crime, the Probation Officer assigned Petitioner a criminal history category of I. *See id*. ¶ 2939; U.S.S.G. § 4A1.1 (2011). This calculation resulted in a guideline sentence of life imprisonment. *See* PSR ¶ 2964; U.S.S.G. Ch. 5 Pt. A (2011). However, a life

---

[2] Because this Court sentenced Petitioner on January 12, 2012, the Court applied the 2011 Sentencing Guidelines, which became effective on November 1, 2011. *See United States v. Ramos*, 509 F. App'x 317, 318 (5th Cir. 2013) (citing *United States v. Rodarte-Vasquez*, 488 F.3d 316, 322 (5th Cir. 2007)) (holding that a sentencing court should generally apply the version of the Sentencing Guidelines in effect at the time of sentencing).

sentence would exceed the statutory maximum for the offenses to which Petitioner pleaded guilty. *See* 18 U.S.C. § 2251(e) (establishing statutory range of fifteen to thirty years imprisonment for first-time offenders convicted of sexual exploitation of children); *id*. § 2252(b)(1) (establishing statutory range of five to twenty years imprisonment for first-time offenders convicted of receipt or distribution of child pornography). The Probation Officer therefore adjusted the guideline imprisonment range to the statutory maximum of 360 months for the sexual exploitation offense and 240 months for the child pornography offense. *See* PSR ¶¶ 2963-64; U.S.S.G. § 5G1.1(a) (2011) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). Neither Petitioner nor the Government objected to the PSR. *See* ECF No. 84-3.

On January 5, 2012, the Government requested that the Court sentence Petitioner consecutively rather than concurrently on the two counts to which he pleaded guilty. *See* ECF No. 85. The Government based its request on U.S.S.G. § 5G1.2(d), which permits a sentencing court to impose consecutive sentences, but only when necessary to produce a combined sentence equal to the top of the Guidelines range in cases where the statutory maximum is less than the minimum total punishment prescribed by the Guidelines. *See United States v. Williams*, 602 F.3d 313, 319 (5th Cir. 2010); *United States v. Saleh*, 257 F. App'x 740, 744 (5th Cir. 2007); U.S.S.G. § 5G1.2(d) (2011); ECF No. 85.

The Court held a sentencing hearing in the Case (the "Sentencing Hearing") on January 12, 2012. *See* Sentencing Hr'g Tr., ECF No. 123. After hearing evidence and allocution, the Court sentenced Petitioner to 360 months of incarceration on the sexual exploitation count and

240 months on the child pornography count.[3] *Id.* at 33. The Court, following the Government's

recommendation, imposed these sentences consecutively rather than concurrently. *See id.*

Petitioner filed the Motion on July 8, 2013. *See* Mot. The Government filed a response to

the Motion (the "Response"), ECF No. 132, on September 12, 2013. Petitioner did not file a

reply.

## II.   DISCUSSION

### A.     Standard

28 U.S.C. § 2255 provides that

[a] prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed
in violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

28 U.S.C. § 2255(a).

After a petitioner has been convicted and has exhausted or waived any right to appeal, a

court is normally "entitled to presume that the defendant stands fairly and finally convicted."

*United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456

U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for

transgressions of constitutional rights and for a narrow range of injuries that could not have been

raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."

*United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37

F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255,

---

[3] The Court also imposed post-incarceration supervised release and a special assessment, and ordered forfeiture and
restitution. *See* Sentencing Hr'g Tr. 34-36; ECF Nos. 92, 111. The Motion does not challenge these aspects of the
sentence. *See* Mot.

the petitioner must establish that "(1) his sentence was imposed in violation of the Constitution

or laws of the United States, (2) the sentencing court was without jurisdiction to impose the

sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence

is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir.

1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a

substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231

(5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first

time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for

not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show

that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*,

163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more

rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589.

If the petitioner does not meet either burden, then he is procedurally barred from attacking his

conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This

procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See*

*Massaro v. United States*, 538 U.S. 500, 508 (2003).

The United States Constitution's Sixth Amendment guarantees an accused the right to the

assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI.

Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v.*

*Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily

brought for the first time on collateral review because of the difficulty of compiling an adequate

record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To obtain relief on an

ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable in light of all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A deficiency in counsel's performance, even if professionally unreasonable, does not necessarily equal ineffective assistance of counsel; the petitioner must also demonstrate actual

prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### B.    Analysis

Petitioner was represented by an attorney ("Counsel")[4] throughout the stages of the Case relevant to the Motion. Petitioner argues that he is entitled to relief under 28 U.S.C. § 2255 because Counsel rendered ineffective assistance in several respects. *See* Mot. 9-26.

### 1.    Counsel's alleged failure to file various motions to suppress

Petitioner argues that Counsel rendered ineffective assistance by failing to move to suppress the evidence obtained by the Federal Agents during the search of Petitioner's residence. *See id*. at 9-23. "In order to support a claim of ineffectiveness based upon defense counsel's failure to move to suppress evidence, a prisoner must prove that his [or her claim for suppression] is meritorious, that the decision not to move to suppress was unreasonable, and that he [or she] suffered prejudice." *Velasquez v. United States*, Civil No. 4:12–CV–251–Y, Criminal No. 4:10–CR–066–Y(6), 2012 WL 5451825, at *5 (N.D. Tex. Nov. 8, 2012) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

When the alleged failure of counsel occurs prior to a guilty plea, the movant must

---

[4] The Court appointed a federal public defender to represent Petitioner on September 22, 2010. *See* ECF Nos. 4, 6. Petitioner then retained a private attorney on June 22, 2011. *See* ECF No. 65. The Court uses the term "Counsel" generically to refer to whichever attorney represented Petitioner at the relevant stage of the Case.

show that a suppression motion had merit, and that if the motion had been granted, he [or she] would not have pled guilty and would have insisted on his [or her] right to stand trial.

*United States v. Mackay*, No. 3:97CR0208T(01), 3:04-CV-0413-D, 2007 WL 700895, at *28 (N.D. Tex. 2007) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-60 (1985)).

### a.   The Federal Agents' alleged failure to execute the Search Warrant within the prescribed timeframe

Petitioner contends that the search conducted by the Federal Agents was unlawful because it occurred outside the timeframe specified in the Search Warrant. *See* Mot. 11-13. Specifically, Petitioner claims that although the Search Warrant "specified that the search should have taken place . . . in the daytime between the hours of 6:00 a.m. and 10 p.m.[,] . . . the Federal Agents executed the warrant at 5:30 a.m." *See id.* at 12 (citing Search Warrant). In doing so, claims Petitioner, the Federal Agents violated Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) and the Fourth Amendment to the United States Constitution. *See id.* at 11-13. Petitioner therefore argues that Counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained by the Federal Agents. *See id.* at 13.

Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) provides that a warrant to search and/or seize a person or property must command the officer to "execute the warrant during the daytime, unless the [magistrate] judge for good cause expressly authorizes execution at another time." Fed. R. Crim. P. 41(e)(2)(A)(ii). "Daytime" is defined as "the hours between 6:00 a.m. and 10:00 p.m. according to local time." Fed. R. Crim. P. 41(a)(2)(B). A law enforcement official who conducts a nighttime search that is not authorized by the warrant violates Rule 41(e)(2)(A)(ii). *See United States v. Ellis*, Criminal Case No. 1:10–CR–00189–TWT–LTW, 2011 WL 1375583, at *4 (N.D. Ga. Mar. 4, 2011), *report and recommendation adopted by* 2011 WL 1375574 (N.D. Ga. Apr. 11, 2011) ("Although this Court is dealing with a violation of the

warrant itself, rather than a violation of Rule 41 per se, this Court finds the same analysis should apply to technical violations of the warrant.").

However, evidence obtained in violation of Rule 41(e)(2)(A)(ii) need not be suppressed in all instances:

> Rule 41 violations are essentially ministerial in nature and a court will grant a motion to suppress based on a failure to comply with its requirements only when the defendant demonstrates legal prejudice or that non-compliance was intentional or in bad faith. Prejudice, in this context, requires a defendant to show that because of the Rule 41 violation, law enforcement authorities subjected him [or her] to a search that might not have occurred had they followed the rule.

*Garcia v. United States*, Nos. EP-04-CA-447-DB, EP-98-CR-586-DB, 2007 WL 4234174, at \*7 (W.D. Tex. Nov. 28, 2007) (citing *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981)).

Moreover, a ministerial violation of Rule 41 does not violate the Fourth Amendment. *See United States v. Thompson*, 263 F. App'x 374, 379 (4th Cir. 2008) (citing *United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006)).

Accordingly, courts regularly deny motions to suppress based on a law enforcement official's failure to execute a warrant during the daytime as required on the face of the warrant. *See United States v. Searp*, 586 F.2d 1117, 1119, 1121-25 (6th Cir. 1978); *United States v. Busse*, Crim. No. 11–48 (SRN/JSM), 2011 WL 2412935, at \*1-4 (D. Minn. May 24, 2011), *report and recommendation adopted by* 2011 WL 2292164 (D. Minn. June 9, 2011); *Ellis*, 2011 WL 1375583, at \*4; *United States v. Deas*, No. 3:07-cr-73 (CFD), 2008 WL 5063901, at \*1-4 (D. Conn. Nov. 24, 2008). In *Ellis*, which is particularly instructive in this regard, the defendant argued "that the search of his residence was illegal because the warrant required it to be executed between 6:00 a.m. and 10:00 p.m.," and "the agents arrived at [the defendant's] home at 5:30 a.m." 2011 WL 1375583, at \*4. The court nevertheless denied the defendant's motion to suppress:

> Assuming without deciding that the agents arrived at the residence thirty minutes earlier than the time indicated on the search warrant, no evidence was presented showing that the agents intended to violate Rule 41 or that Defendant was prejudiced by the agents' early arrival. Accordingly, suppression is not warranted on this issue.

*Id*.

Here, as in *Ellis*, the Search Warrant required the Federal Agents to execute it "in the daytime 6:00 a.m. to 10 p.m." on or before October 1, 2010. *See* ECF No. 126-1, at 105. The Court assumes arguendo that the Federal Agents initiated the search at 5:30 a.m. and thereby violated Rule 41(e)(2)(A)(ii). Nevertheless, for the following reasons, Petitioner has failed to "demonstrate[] legal prejudice" resulting from the Federal Agents' alleged failure to observe Rule 41(e)(2)(A)(ii), "or that non-compliance was intentional or in bad faith." *See Garcia*, 2007 WL 4234174, at *7 (citing *Marx*, 635 F.2d at 441).

First, neither the Motion nor Petitioner's affidavit contain any allegation that the Federal Agents intentionally disregarded the timeframe specified in the Search Warrant. *See* Mot. 11-13; Pet'r Aff., ECF No. 126-1, at 3, 7, 15-16. The mere fact that the Federal Agents did not comply with the Search Warrant is insufficient to establish bad faith or intent to flout the rule. *See Deas*, 2008 WL 5063901, at *2 (citing *United States v. Williamson*, 439 F.3d 1125, 1134 n.7 (9th Cir. 2006)) ("'Technical errors' are not considered 'deliberate and intentional disregard' of the Rule that would justify suppression; if that were the case, *all* mistakes would be intentional and deliberate[.]").

Secondly, Petitioner does not explain how the Federal Agents' Rule 41(e)(2)(A)(ii) violation prejudiced him. *See* Mot. 11-13; Pet'r Aff. 3, 7, 15-16. Specifically, Petitioner offers no reason why the search "might not have occurred had [the Federal Agents] followed the rule" by merely waiting an additional half-hour. *See Garcia*, 2007 WL 4234174, at *7 (citing *Marx*,

11

635 F.2d at 441). *Accord Ellis*, 2011 WL 1375583, at *4.

Therefore, even assuming the Federal Agents did not comply with Rule 41(e)(2)(A)(ii), a motion to suppress based on that violation would not have succeeded. Counsel therefore did not render ineffective assistance by failing to file such a motion. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Because Petitioner cannot "show that a suppression motion had merit," his ineffective assistance claim fails. *See Mackay*, 2007 WL 700895, at *28 (citing *Hill*, 474 U.S. at 57-60).

### b.   The Federal Agents' alleged failure to show Petitioner the Search Warrant upon his request

Petitioner claims that the Federal Agents refused to furnish him with a copy of the Search Warrant. *See* Mot. 13-16. He contends that he demanded to see the Search Warrant several times during the search, and that the Federal Agents repeatedly ignored his requests. *See id.* at 15-16; Pet'r. Aff. 3-4, 15-17. He also asserts that the Federal Agents failed to give him a copy of the Search Warrant at any point after completing the search. *See* Pet'r. Aff. 17. Petitioner therefore contends that the Federal Agents conducted the search in violation of Federal Rule of Criminal Procedure 41(f)(1)(C) and the Fourth Amendment. *See* Mot. 13-16. He claims that Counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained during the search. *See id.* at 9.

Federal Rule of Criminal Procedure 41(f)(1)(C) provides:

> The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

Fed. R. Crim. P. 41(f)(1)(C).

Again, however,

> Rule 41 violations are essentially ministerial in nature and a court will grant a
> motion to suppress based on a failure to comply with its requirements only when
> the defendant demonstrates legal prejudice or that non-compliance was intentional
> or in bad faith. Prejudice, in this context, requires a defendant to show that
> because of the Rule 41 violation, law enforcement authorities subjected him to a
> search that might not have occurred had they followed the rule.

*Garcia*, 2007 WL 4234174, at *7 (citing *Marx*, 635 F.2d at 441).

Furthermore, a law enforcement official's failure to leave a copy of the search warrant with the

defendant pursuant to Rule 41(f)(1)(C) does not violate the Fourth Amendment. *See Thompson*,

263 F. App'x at 379 (citing *Hurwitz*, 459 F.3d at 472).

Petitioner does not contend that the search would not have occurred or would have

proceeded in a different matter if the Federal Agents complied with Rule 41(f)(1)(C), so he

cannot show that the alleged violation prejudiced him. *See* Mot. 15-16; Pet'r. Aff. 3-4, 15-17.

However, the Motion and its supporting documentation do fairly allege that the Federal Agents

violated the Rule intentionally or in bad faith. *See* Mot. 15-16; Pet'r. Aff. 3-4, 15-17.

Specifically, Petitioner alleges:

> I repeatedly asked who [the Federal Agents] were and what was going on only to
> be told "We'll tell you later." I also repeatedly asked to see the Search Warrant
> only to be ignored. I asked them why they were searching my home without
> showing me a search warrant and without identifying themselves. I asked what
> exactly it was they were looking for and why they were there – again I was
> ignored several more times. Not once did I ever see a Search Warrant[.]

Pet'r. Aff. 3.

"To date," claims Petitioner, he has "not seen or received copies of an arrest warrant, a search

warrant or an affidavit." *Id*. at 17. These allegations, if true, could establish that the Federal

Agents not only failed to comply with the Rule, but also that their failure was not an innocent

mistake.

Petitioner also contends that he informed Counsel of the alleged Rule 41(f)(1)(C)

violation, and that Counsel nevertheless failed to file a motion to suppress. *See id*. at 16-17; 34.

Petitioner further alleges that Counsel's failure to file a potentially meritorious motion to

suppress was professionally unreasonable, and that he would not have taken a plea if this Court

suppressed the evidence obtained by the Federal Agents. *See* Mot. 2-3. *See also United States v.*

*Mackay*, 2007 WL 700895, at *28 (citing *Hill*, 474 U.S. at 57-60) (holding that, to satisfy the

prejudice element of an ineffective assistance claim based on counsel's failure to file a

suppression motion prior to a guilty plea, the petitioner must establish that he or she would not

have pleaded guilty and would have proceeded to trial but for counsel's deficient performance).

As a result, the Motion, at least on its face, raises a potentially meritorious ineffective assistance

of counsel claim.

The Government, by contrast, claims that the Federal Agents did in fact give Petitioner a

copy of the Search Warrant. *See* Resp. 6-7; ECF No. 132-1, at 2. Specifically, the Government

refers to the affidavit of the officer who executed the Search Warrant, who avers that "[l]aw

enforcement personnel presented [Petitioner] with a copy of the Search Warrant" at the time of

the search, and that "he briefly glanced at it." ECF No. 132-1, at 2. The Government therefore

argues that Counsel did not render ineffective assistance in the Case.[5] *See* Resp. 7.

A court "may not decide contested issues of fact from competing affidavits" when ruling

upon a § 2255 motion. *United States v. Bacon*, Criminal Action No. 2:09–CR–456, Civil Action

No. 2:12–CV–310, 2013 WL 5212655, at *17 (S.D. Tex. Sept. 17, 2013). As a result, the Court

cannot conclude on this record whether the Federal Agents violated Rule 41(f)(1)(C), and, if so,

---

[5] The Court notes that the Response contains no allegations regarding whether or not Petitioner told Counsel that he
had never seen or received a copy of the Search Warrant. *See* Resp. 6-7. Nor has the Government attached an
affidavit from Counsel indicating whether or not Petitioner ever advised Counsel of the Federal Agents' alleged
violation.

whether the Federal Agents did so intentionally or in bad faith. Nor can the Court conclude

whether Counsel was or should have been aware of the Federal Agents' alleged violation.

Consequently, the Court cannot assess whether a motion to suppress would have been

meritorious or whether Counsel rendered ineffective assistance by failing to file one. The Court

must hear testimony and make credibility determinations to decide which version of events is

accurate. Thus, as described in greater detail below, the Court will hold an evidentiary hearing to

determine whether Counsel rendered ineffective assistance by failing to file a motion to suppress

based on the Federal Agents' alleged failure to provide Petitioner a copy of the Search Warrant.

### c.      The Federal Agents' alleged violation of the knock and announce rule

Petitioner contends that the Federal Agents violated the so-called "knock and announce"

rule mandated by the Fourth Amendment of the United States Constitution and 18 U.S.C. § 3109

when executing the Search Warrant:

> [Petitioner] woke up from his sleep to a "loud, aggressive" pounding on his front
> door at approximately 5:30 a.m. the morning of September 21, 2010. The Federal
> Agents did not announce why they were there or state that they were acting
> pursuant to a valid search warrant. Rather, [Petitioner] was "rushed and knocked
> to the ground" by several ICE agents with "at least one pointing a gun" at his
> head. [Petitioner], while on the floor, was then placed in handcuffs. When
> [Petitioner] asked what was happening, the officers stated, "We'll tell you later,"
> further undermining their adherence to the knock-and-announce rule.

Mot. 17-18 (citations omitted).

Petitioner claims that Counsel rendered ineffective assistance by failing to file a motion to

suppress the evidence obtained in violation of the knock and announce rule. *See id*. at 19-20. "If

[C]ounsel had secured the exclusion of this evidence," argues Petitioner, "there is a strong

likelihood that [Petitioner] would not have taken a plea." *Id*. at 20.

The knock and announce rule requires law enforcement officers, before entering a

suspect's home, to "announce their presence and provide residents an opportunity to open the door." *Hudson v. Michigan*, 547 U.S. 586, 589 (2006) (citing *Wilson v. Arkansas*, 514 U.S. 927, 931-32 (1995)). *See also United States v. Banks*, 540 U.S. 31, 41 (2003) (mandating a "reasonable wait time" before entry). Whether law enforcement officers comply with the knock and announce rule when entering a residence is relevant to the question of whether that search or seizure is reasonable under the Fourth Amendment to the United States Constitution. *See Wilson*, 514 U.S. at 934. Compliance with the knock and announce rule is also mandated by statute. *See* 18 U.S.C. § 3109 ("The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, *after notice of his authority and purpose*, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." (emphasis added)).

However, suppression of evidence is not an available remedy for violations of either the statutory or the constitutional knock and announce rule. *Hudson*, 547 U.S. at 588-602 (constitutional rule); *United States v. Bruno*, 487 F.3d 304, 304-06 (5th Cir. 2007) (statutory rule). The proper avenue to redress such a violation is a separate civil rights suit, not a pretrial motion to suppress. *See Hudson*, 547 U.S. at 596-98. For that reason, a motion to suppress predicated on the Federal Agents' failure to observe the knock and announce rule would have necessarily failed.[6] *See United States v. Childs*, Nos. 3:10-CR-0075-O, 3:12-CV-1405-O-BD, 2012 WL 7801603, at *3 (N.D. Tex. Nov. 19, 2012), *report and recommendation adopted by* 2013 WL 1197745 (N.D. Tex. Mar. 22, 2013); *Rogers v. Director, TDCJ-CID*, CIVIL ACTION NO. 5:10–CV–150, 2013 WL 4837365, at *5 (E.D. Tex. Sept. 10, 2013); *United States v. Anthony*, Criminal No. G-05-07, Civil Action No. G-06-324, 2006 WL 3044468, at *2 (S.D.

---

[6] The Court need not decide whether the Federal Agents actually violated the rule.

Tex. Oct. 23, 2006); *United States v. Harrien*, No. 1:06 CR 35LG JMR, 2006 WL 2338252, at

*1 (S.D. Miss. Aug. 10, 2006). Counsel's failure to file such a nonmeritorious motion did not

prejudice Petitioner, so Petitioner's claim fails. *See Childs*, 2012 WL 7801603, at *3; *Rogers*,

2013 WL 4837365, at *5. *See also Clark*, 19 F.3d at 966 ("Failure to raise meritless objections is

not ineffective lawyering; it is the very opposite.").

> d.     **The Federal Agents' alleged failure to advise Petitioner of his**
>        ***Miranda* rights prior to interrogation**

Petitioner argues that Counsel rendered ineffective assistance by failing to move to

suppress certain statements allegedly procured in violation of *Miranda v. Arizona*, 384 U.S. 436

(1966). *See* Mot. 20-23. Specifically, Petitioner claims that the Federal Agents advised him of his

*Miranda* rights only after obtaining numerous incriminating admissions through custodial

interrogation. *See id.* at 21-22 (citing Pet'r. Aff. 6). These statements included admissions that

Petitioner (1) "downloaded several commercially available child pornography videos onto his

computer desktop;" (2) "knew the videos contained minors involved in sexually explicit

activity;" (3) "had been involved in the receipt and distribution of child pornography for several

years using a peer-to-peer file sharing program;" (4) "had secretly filmed his students at school

for years;" and (5) "was 'glad' the [Federal A]gents caught him as he would 'otherwise be

unable to stop.'" *Id.* at 22. Petitioner contends that, if Counsel had filed a motion to suppress

Petitioner's admissions, "there is a reasonable probability that the outcome [of the Case] would

have been different because [Petitioner] would likely have declined to enter into a plea

agreement if these statements had been excluded." *Id.* at 23.

In *Miranda*, the United States Supreme Court held that "the prosecution may not use

statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the

17

defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. Nevertheless, "any statement made during a custodial interrogation is admissible if the government shows the defendant knowingly and voluntarily waived his *Miranda* rights and agreed to answer questions." *Velasquez*, 2012 WL 5451825, at *5 (citing *Miranda*, 384 U.S. 436; *United States v. Cardenas*, 410 F.3d 287, 292-93 (5th Cir. 2005)).

Petitioner's ineffective assistance argument fails because he affirmed under oath to this Court that he made the incriminating statements to the Federal Agents *after* he had knowingly waived his *Miranda* rights, not before. At the Plea Hearing, the Government summarized a section of the Factual Basis as follows:

> *After being advised of his* Miranda *rights and waiving them*, [Petitioner] stated he had downloaded several child pornography videos onto his desktop computer. He admitted he knew the videos contained minors involved in sexually explicit activity and stated he had been involved in the receipt and possession of child pornography for several years. When confronted with the discovery of the hidden camera videos, [Petitioner] admitted to having secretly filmed his students for years. [Petitioner] further admitted to secretly filming them in other locations as well as inside the school. He further stated he was glad the agents caught him, as he would be unable to stop otherwise.

Plea Hr'g Tr. 14-15 (emphasis added).

When asked by the Court whether "everything that the prosecutor said [was] true," Petitioner replied "Yes, sir." *Id*. at 15. The Court then asked Petitioner whether he had read the Factual Basis, which contains the same inculpatory statements summarized above. *See id*.; Plea Agreement 23. Petitioner affirmed that he had, and that the Factual Basis was also true and correct in its entirety. *See* Plea Hr'g Tr. 15-16.

Petitioner, having sworn to this Court that the Federal Agents informed him of his *Miranda* rights prior to interrogation and that he knowingly waived those rights, cannot now claim that the Federal Agents advised him of his rights only after obtaining a confession. *See Velasquez*, 2012 WL 5451825, at *5-6; *United States v. James*, Criminal Action No. 05-059, 2007 WL 2323385, at *8 (E.D. La. Aug. 10, 2007). "[A] defendant ordinarily will not be heard to refute [his or] her testimony given at a plea hearing while under oath. 'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Because Petitioner "himself admitted that he had been advised of his *Miranda* rights, waived them, and then talked to agents about his involvement in" the sexual exploitation of children and the distribution of child pornography, "any motion by [C]ounsel to suppress such statement[s] would have been meritless." *See Velasquez*, 2012 WL 5451825, at *6 (citing *Clark*, 19 F.3d at 966). *Accord James*, 2007 WL 2323385, at *8. Because a suppression motion would not have succeeded, Petitioner cannot show that he would not have pleaded guilty but for Counsel's failure to file one. *See Mackay*, 2007 WL 700895, at *28 (citing *Hill*, 474 U.S. at 57-60). Thus, Petitioner's claim fails.

## 2. Counsel's alleged failure to introduce mitigating evidence

Petitioner argues that his "Sixth Amendment right to effective assistance of counsel was violated because [Counsel] failed to adequately investigate and present highly relevant mitigating evidence at [the S]entencing [H]earing that most likely would have affected the outcome of his sentence." Mot. 23. In particular, Petitioner contends that Counsel should have introduced the report of a psychologist ("Dr. Aubrey") that Petitioner claims "includ[es] findings that [Petitioner] presented a low risk of recidivism, low risk of future violent or non-violent

19

offenses, and a low risk of difficulty in conforming to release to the community." *Id*. at 24.

Petitioner also faults Counsel's failure to introduce evidence that Petitioner suffers from post-traumatic stress disorder ("PTSD") as a result of childhood sexual abuse. *See id*. at 24-25.

According to Petitioner, Counsel was aware of this mitigating psychological evidence prior to the Sentencing Hearing, and therefore could have and should have presented it to the Court. *See id*. at 25; Pet'r. Aff. 17, 19, 23-24, 28-29, 32-33, 36-37. Petitioner claims that "there is a reasonable probability that, if presented with the findings of Dr. Aubrey and other evidence of [Petitioner's] mental health issues and childhood abuse, the Court would not have imposed such a lengthy sentence." Mot. 26.

     To demonstrate ineffective assistance of counsel in the context of a sentencing hearing in a non-capital case, a petitioner must show both that his or her counsel's performance was deficient, and that "there is a reasonable probability that but for trial counsel's errors the Movant's non-capital sentence would have been significantly less harsh." *United States v. Arellano-Meraz*, Civil Action No. SA–10–CA–023–XR, Criminal Case No. SA–08–CR–685–XR, 2010 WL 316476, at *1 (W.D. Tex. Jan. 25, 2010) (internal quotation marks omitted) (quoting *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)).

     As noted above, this Court imposed a Guideline sentence in the Case. Under the 2011 Sentencing Guidelines, a court may depart downward from a Guidelines sentence in a child exploitation case only if there exists a mitigating circumstance of the type expressly enumerated in Chapter Five, Part K of the Sentencing Guidelines. *See* U.S.S.G. § 5K2.0(b) (2011). *Accord Bacon*, 2013 WL 5212655, at *13-14. The defendant's mental or emotional condition will ordinarily not justify a downward departure in a child exploitation case. *See* U.S.S.G. § 5H1.3 (2011) (listing the defendant's mental and emotional condition in Part H, rather than Part K, of

the 2011 Sentencing Guidelines); *id*. § 5K2.13 (providing that the sentencing court may not

depart downward on the basis of a defendant's diminished capacity in child exploitation cases);

*id*. § 5K2.22 (listing the few instances in which the offender's special characteristics are

permissible grounds for a downward departure in child exploitation cases, which do not include

the defendant's mental and emotional condition). *See also Bacon*, 2013 WL 5212655, at *14

(listing the only permissible grounds for downward departure in child exploitation cases). *But see*

*United States v. Rothwell*, 847 F. Supp. 2d 1048, 1059 (E.D. Tenn. 2012) (granting downward

departure pursuant to U.S.S.G. § 5H1.3 in child exploitation case where defendant suffered from

marked cognitive disabilities and where government agreed to departure).

 As such, a downward departure is rarely warranted in a child exploitation case even

where a psychologist examines the defendant and concludes he or she is unlikely to reoffend. *See*

*United States v. McElheney*, 630 F. Supp. 2d 886, 887, 889, 897-98, 901, 904 (E.D. Tenn. 2009);

*United States v. Stern*, 590 F. Supp. 2d 945, 951, 958 (N.D. Ohio 2008); *United States v. Baird*,

580 F. Supp. 2d 889, 893-94 (D. Neb. 2008). Nor is a downward departure warranted in child

exploitation cases where the defendant suffers from a mental illness, whether as a result of

childhood sexual abuse or otherwise. *See United States v. Dolehide*, No. 10-CR-92-LRR, 2011

WL 1812795, at *3-7 (N.D. Iowa May 6, 2011); *United States v. Meillier*, 650 F. Supp. 2d 889,

892-93, 896 (D. Minn. 2009); *United States v. Bowie*, No. 05-CR-77-LRR, 2006 WL 2699230, at

*9 (N.D. Iowa Sept. 18, 2006).

 As a result, it is highly unlikely that Petitioner's "non-capital sentence would have been

significantly less harsh" if Counsel introduced psychological evidence at the Sentencing Hearing.

*See Spriggs*, 993 F.2d at 88 (emphasis omitted). Therefore, the Court cannot conclude that

Counsel rendered ineffective assistance by failing to introduce Dr. Aubrey's report or evidence

regarding Petitioner's PTSD and childhood sexual abuse. *See Bacon*, 2013 WL 5212655, at *15-17; *Contreras v. United States*, No. 08–11526, Criminal Case No. 05–50088, 2011 WL 1598386, at *2 (E.D. Mich. Mar. 18, 2011), *report and recommendation adopted by* 2011 WL 1627349 (E.D. Mich. Apr. 28, 2011) ("There simply is no reason to believe that if petitioner's trial counsel would have filed a motion for downward departure based on petitioner's mental health issues that his sentence would have been any different.").

That said, even though downward *departures* in child exploitation cases are rarely warranted, a sentencing court may impose a downward *variance* that results in a below-Guideline sentence. *See Rothwell*, 847 F. Supp. 2d at 1050-79; *United States v. Young*, No. 1:09-cr-252, 2010 WL 502754, at *3-4 (W.D. Mich. Feb. 5, 2010). Indeed, "courts are increasingly issuing non-Guidelines sentences in child pornography cases." *McElheney*, 630 F. Supp. 2d at 894. However, a downward variance is only warranted where the case presents atypical circumstances differentiating it from other cases involving similar offenses. *See Gall v. United States*, 552 U.S. 38, 47, 50 (2007); *Dolehide*, 2011 WL 1812795, at *7; *Meillier*, 650 F. Supp. 2d at 898; *Stern*, 590 F. Supp. 2d at 947. *See also* 18 U.S.C. § 3553(a) (setting forth factors a court should consider when imposing a sentence). Although a defendant need not demonstrate *extraordinary* circumstances to receive a non-Guideline sentence, the circumstances of the case must be "sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 47, 50.

Here, neither Petitioner's mental and emotional condition nor his perceived unlikelihood of recidivism would warrant a downward variance, even if Counsel had introduced mitigating psychological evidence at the Sentencing Hearing. Though a court must consider "the history and characteristics of the defendant" when deciding whether to impose a non-Guideline sentence, that is not the only relevant consideration; the court must also consider "the nature and

circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," among other factors. 18 U.S.C. § 3553(a)(1)-(2). The seriousness of Petitioner's offense outweighs any potential mitigating effect of Petitioner's proffered psychological evidence. The Case is one of the most disturbing child exploitation cases this Court has encountered. Petitioner produced, distributed, and possessed child pornography and erotica, and engaged in sexual contact with at least one minor female. *See* Plea Agreement 14, 22-23. Petitioner admitted to victimizing 393 children in total. *See id*. at 22. Petitioner also pleaded guilty to possessing sadomasochistic child pornography of the most disturbing variety. *See id*. at 21. Thus, assuming for the sake of argument that Petitioner poses a low risk of recidivism and suffers from PTSD, the sentence he ultimately received remains the proper sentence in the Case.

In sum, given the seriousness of Petitioner's offense, it is highly unlikely that Petitioner's "non-capital sentence would have been significantly less harsh" if Counsel introduced psychological evidence at the Sentencing Hearing. *See Spriggs*, 993 F.2d at 88 (emphasis omitted).

The Court recognizes that mitigating psychological evidence can sometimes justify a downward departure even where the defendant has committed a serious child exploitation offense. *See United States v. Sheridan*, 503 F. App'x 101, 102-03 (3d Cir. 2012); *Young*, 2010 WL 502754, at *2-5; *Meillier*, 650 F. Supp. 2d at 892, 897; *McElheney*, 630 F. Supp. 2d at 887; *Stern*, 590 F. Supp. 2d at 951, 958; *Baird*, 580 F. Supp. 2d at 894. However, such variances are warranted only where the defendant commits offenses less heinous, or suffers from mental and emotional conditions more profound, than Petitioner's. *See United States v. Guerra*, 535 F. App'x 214, 217 (4th Cir. 2013); *Matthew*, 449 F. App'x at 543-44; *United States v. Stall*, 581

F.3d 276, 279-80, 284 n.2, 288 (6th Cir. 2009); *Falgout*, 325 F. App'x at 778; *United States v. Pugh*, 515 F.3d 1179, 1182-85 (11th Cir. 2008); *Rothwell*, 847 F. Supp. 2d at 1071; *Young*, 2010 WL 502754, at *2-5; *Meillier*, 650 F. Supp. 2d at 897; *Stern*, 590 F. Supp. 2d at 951, 952-53; *Baird*, 580 F. Supp. 2d at 895.

Moreover, at least as far as the evidence of Petitioner's PTSD and childhood abuse is concerned, the Court was fully aware of Petitioner's condition and experiences at the time it sentenced him. *See* PSR ¶¶ 11, 23, 2942, 2947 (describing Petitioner's mental and emotional health and childhood abuse); Sentencing Hr'g Tr. 14, 16 (Petitioner informing the Court of his mental and emotional health and childhood abuse during allocution). Therefore, Counsel's alleged failure to present this evidence on these issues did not prejudice Petitioner.

In sum, the mitigating evidence Petitioner discusses in the Motion is not "sufficiently compelling to support" a downward variance under the facts of the Case, so Counsel did not render ineffective assistance by failing to present it at sentencing. *See Gall*, 552 U.S. at 47, 50.

### C.      Evidentiary Hearing

Petitioner requests an evidentiary hearing on his ineffective assistance claims. *See* Mot. 26. 28 U.S.C. § 2255(b) provides that

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

For the reasons discussed above, the Motion and the files and records of the Case demonstrate that Petitioner is entitled to no relief on his claim that Counsel rendered ineffective assistance by failing to introduce mitigating psychological evidence. Nor is Petitioner entitled to relief on his claims that Counsel failed to move to suppress evidence based on the Federal

24

Agents' alleged failures to (1) perform the search during the daytime; (2) comply with the knock and announce rule; and (3) advise Petitioner of his *Miranda* rights prior to interrogation. The Court therefore rejects those claims without holding an evidentiary hearing. *See Davis v. United States*, Nos. 3:07-CV-1995-P; 3:01-CR-0323-P (03), 2009 WL 3488052, at *9 (N.D. Tex. Oct. 28, 2009) (citing *United States v. Peralta-Ramirez*, Criminal No. H-04-0150-06, Civil Action No. H-07-4582, 2008 WL 4630369, at *11 (S.D. Tex. Oct. 16, 2008)).

However, the record is insufficient for the Court to resolve Petitioner's claim that Counsel failed to move to suppress evidence obtained in violation of Federal Rule of Criminal Procedure 41(f)(1)(C). The Court must take testimony and make credibility determinations to determine whether the Federal Agents failed to provide Petitioner with a copy of the Search Warrant, and, if so, whether that violation was intentional or the product of bad faith. The Court must also determine whether Counsel knew or should have known about the Federal Agents' alleged violation, and if so whether Counsel's failure to file a motion to suppress amounted to professionally deficient performance that prejudiced Petitioner. In a separate order, the Court will schedule an evidentiary hearing on those issues alone. The Court will issue a writ to secure Petitioner's appearance at that hearing.

### D.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, Petitioner must obtain a certificate of appealability before appealing this Order. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336. "A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument." *Peralta-Ramirez*, 2008 WL 4630369, at *12 (citing *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)).

Jurists of reason would not debate the merits of Petitioner's claim that Counsel rendered ineffective assistance by failing to introduce mitigating psychological evidence. Nor would jurists debate his claims that Counsel failed to move to suppress evidence based on the Federal Agents' alleged failures to (1) perform the search during the daytime; (2) comply with the knock and announce rule; and (3) advise Petitioner of his *Miranda* rights prior to interrogation. The Court sua sponte denies Petitioner a certificate of appealability as to those claims. *See Peralta-Ramirez*, 2008 WL 4630369, at *12 (citing *Alexander*, 211 F.3d at 898).

The Court reserves ruling on whether a certificate of appealability shall issue as to Petitioner's remaining ineffective assistance claim until after the evidentiary hearing discussed above.

## III.   CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 126, EP-10-CR-2736-KC-1, is hereby **DENIED** in part. The Court **DISMISSES** Petitioner's claims that Counsel rendered ineffective assistance by:

(1)     failing to move to suppress evidence obtained in violation of Federal Rule of Criminal Procedure 41(e)(2)(A)(ii);

(2)     failing to move to suppress evidence obtained in violation of the knock and announce rule;

(3)     failing to move to suppress evidence obtained in violation of *Miranda v.*

26

*Arizona*, 384 U.S. 436 (1966); and

(4)    failing to introduce mitigating psychological evidence.

**IT IS FURTHER ORDERED** that the Court **DENIES** a certificate of appealability on the claims listed above.

**IT IS FURTHER ORDERED** that the Court **RESERVES RULING** on Petitioner's claim that Counsel rendered ineffective assistance by failing to move to suppress evidence obtained in violation of Federal Rule of Criminal Procedure 41(f)(1)(C). The Court shall issue a separate order setting an evidentiary hearing on this limited issue. The Court shall issue a writ securing Petitioner's appearance for this hearing.

**SO ORDERED**.

**SIGNED this 14th day of May, 2014.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

27