**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MARCO ANTONIO ALFEREZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-215** |
| | § | **EP-10-CR-2736-KC-1** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent**. | § | |

## <u>ORDER</u>

On this day, the Court considered Petitioner's Verified Motion to Vacate and Set Aside Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion"), ECF No. 126.[1] By the Motion, Petitioner challenges his criminal sentence on the ground that he received ineffective assistance of counsel. In its May 14, 2014, Order (the "May 2014 Order"), ECF No. 134,[2] the Court denied the Motion in part, but reserved ruling on one of Petitioner's ineffective assistance claims so that the Court could hold an evidentiary hearing. *See* May 2014 Order 1, 12-15, 25, 26-27. The Court now **DENIES** the Motion in its entirety for the reasons described below.

## I.     BACKGROUND

The Court presumes the reader's familiarity with the May 2014 Order, which discusses the factual and procedural background of the Case and the Motion. *See id*. at 1-5. Defined terms and references to docket entries in the Case are used throughout this Order as they are defined in the May 2014 Order.

---

[1] For the purposes of this Order, all docket entries refer to the criminal case EP-10-CR-2736-KC-1 (the "Case").

[2] The May 2014 Order is also available at *Alferez v. United States*, Nos. EP–13–CV–215, EP–10–CR–2736–KC–1, 2014 WL 2002883 (W.D. Tex. May 14, 2014). The Court shall refer to the pagination assigned to the May 2014 Order by the court's electronic docketing system, rather than to the pagination assigned by Westlaw.

In the May 2014 Order, the Court reserved ruling on Petitioner's single surviving claim that Counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained by the Federal Agents while executing the Search Warrant. *See id.* at 1, 12-15, 25, 26-27. On June 26, 2014, the Court held an evidentiary hearing (the "Evidentiary Hearing") to determine whether the Federal Agents violated Federal Rule of Criminal Procedure 41(f)(1)(C) by refusing to furnish him with a copy of the Search Warrant either before or after the search. *See* Mot. 9, 13-16. The Court heard testimony from various witnesses and received documentary exhibits into evidence.

Petitioner testified at the Evidentiary Hearing to the following version of events: On the date of the search, the Federal Agents arrived at his residence around 5:30 a.m., knocked on the door, and announced that they had a search warrant. After Petitioner opened the door, the Federal Agents physically forced him to the ground and handcuffed him. While he was handcuffed, Petitioner asked to see the Search Warrant multiple times, but the Federal Agents did not comply with his request. The Federal Agents then interviewed Petitioner at his dining room table. During the course of the interview, Petitioner made multiple incriminating statements regarding his offenses. *See* Ev. Hr'g Ex. 4. Petitioner did not demand to see the Search Warrant at any point during the interview. Once the interview had concluded, however, Petitioner again requested to see the Search Warrant, and the Federal Agents again denied his request. Petitioner never received a copy of the Search Warrant from the Federal Agents, and did not see the Search Warrant until a year and a half after the search, when he saw a copy in Counsel's case file. Petitioner testified that if the Federal Agents had produced a copy of the Search Warrant at the time of the search, he would not have made the incriminating statements.

Petitioner further testified that he informed his first trial attorney, Assistant Federal

Public Defender David Kimmelman ("Kimmelman"), about the Federal Agents' failure to provide him a copy of the Search Warrant, and asked Kimmelman whether it would therefore be advisable to move to suppress the evidence obtained during the search. Petitioner testified that Kimmelman did not respond. Petitioner did not testify at the Evidentiary Hearing regarding whether and when he informed his second trial attorney, private defense attorney Michael Gibson ("Gibson"),[3] about the Federal Agents' alleged failure to produce a copy of the Search Warrant. However, Petitioner did testify that, if either Kimmelman or Gibson had filed a motion to suppress the evidence obtained during the search, and if that motion had been successful, Petitioner would not have pleaded guilty and would have instead proceeded to trial.

Petitioner also introduced testimony from Gibson at the Evidentiary Hearing. Gibson testified that he did not file any pre-trial suppression motions in the Case. Gibson also testified that Petitioner did mention to him that the Federal Agents had failed to produce a copy of the Search Warrant, but Gibson could not recall whether Petitioner informed him of those allegations before or after his guilty plea. Gibson further testified that, if Petitioner had asked him to file a motion to suppress prior to pleading guilty, he would have advised Petitioner that such a motion would have virtually no chance of success, and would therefore have been a "waste of time." However, Gibson expressed his opinion that, although such a motion would likely be unmeritorious, it would not be frivolous.

Gibson also testified as to his defense strategy in the Case. Given the severity of the offenses charged in the Indictment and the lengthy term of imprisonment Petitioner faced, Gibson advised Petitioner to cooperate with the Government in the hope of obtaining a favorable

---

[3] As noted in the May 2014 Order, the Court appointed Kimmelman to represent Petitioner on September 22, 2010. *See* ECF Nos. 4, 6. Petitioner then retained Gibson on June 22, 2011. *See* ECF No. 65.

plea agreement and a reduced sentence. Gibson thought that fighting the Government by filing a motion to suppress would decrease the Government's willingness to negotiate favorably with Petitioner. Gibson conceded that, in retrospect, doing so was a "grievous tactical error" because the Court ultimately imposed long consecutive prison sentences. Gibson did not expect that Petitioner would ultimately receive consecutive sentences because he had very rarely seen a court impose them. With the benefit of hindsight, Gibson would have refused to cooperate with the Government, filed a motion to suppress, and advised Petitioner to go to a jury trial on all counts because Petitioner "couldn't have come out any worse than [h]e did." Without prior knowledge of Petitioner's ultimate sentence, however, Gibson believed that a motion to suppress could have harmed Petitioner's chance for a more favorable outcome.

The Government then introduced testimony of two of the Federal Agents: Gilbert Anthony Campa ("Campa") and Nicolas Marquez ("Marquez"). Campa testified that he arrived at Petitioner's residence along with Marquez and other law enforcement personnel at 6:10 a.m. on the day of the search. Campa testified that Marquez knocked on the door and announced that the Federal Agents were present to execute a search warrant. Petitioner opened the door. Campa testified that he instructed Petitioner to get on the ground, but did not push or force Petitioner to the ground. Campa handcuffed Petitioner while the other Federal Agents searched the residence for immediate threats. Because Petitioner had answered the door in his undergarments, Campa arranged for another agent to bring Petitioner some clothing. Campa then released Petitioner from the handcuffs so that he could clothe himself. Campa then seated Petitioner at the dining room table with his back to the other officers who were performing the search. Campa testified that he then pulled a copy of the Search Warrant out of a folder, slid it across the table, and told Petitioner "This is why we're here." Campa testified that Petitioner looked at the Search Warrant

and then moved it to the side of the table. Campa gave Petitioner his *Miranda* warnings, and Campa and Marquez then interviewed him at the table. Campa testified that Petitioner did not ask to see the Search Warrant at any point during the interview, and that he would not have needed to because a copy of the Search Warrant was directly in front of Petitioner throughout the entire interview. Marquez testified to a version of events identical to that given by Campa.

The Government also introduced the testimony of Marcela Barraza ("Barraza"), a former detective with the El Paso County Sheriff's Department. Barraza testified that, prior to her retirement from law enforcement, she assisted the Federal Agents' execution of the Search Warrant in the Case. She testified that she observed Campa and Marquez seating Petitioner at the table during the search. She then watched as Campa produced a copy of the Search Warrant, slid it over to Petitioner, and said "This is why we're here." She further testified that Petitioner reviewed the Search Warrant at that time.

The Government also called Kimmelman to the witness stand at the Evidentiary Hearing. Kimmelman testified that he did not recall Petitioner ever informing him that the Federal Agents had failed to provide him a copy of the Search Warrant. Kimmelman likewise could not recall Petitioner requesting that Kimmelman file a motion to suppress on that ground. Kimmelman further testified that, if Petitioner had asked him to file such a motion, he would have researched whether it would be potentially meritorious. However, Kimmelman could not recall researching that issue in the Case. He also testified that he believed a motion to suppress predicated solely on the Federal Agents' alleged failure to provide Petitioner a copy of the Search Warrant would be unlikely to succeed.

II.     **DISCUSSION**

A.     **Standard**

28 U.S.C. § 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the petitioner must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231

(5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To obtain relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the

7

result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable in light of all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A deficiency in counsel's performance, even if professionally unreasonable, does not necessarily equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

8

## B.      Analysis

As noted above, Petitioner claims that the Federal Agents refused to furnish him with a copy of the Search Warrant at any point before, during, or after the search of his residence. *See* Mot. 13-16. Petitioner therefore contends that the Federal Agents conducted the search in violation of Federal Rule of Criminal Procedure 41(f)(1)(C), the requirements of which are described in greater detail below.[4] *See id*. He claims that Counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained during the search. *See id*. at 9.

"Failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *United States v. Chavez-Valencia*, 116 F.3d 127, 134 (5th Cir. 1997). "In order to support a claim of ineffectiveness based upon defense counsel's failure to move to suppress evidence, a prisoner must prove that his [or her claim for suppression] is meritorious, that the decision not to move to suppress was unreasonable, and that he [or she] suffered prejudice" as a result of defense counsel's failure to file the motion. *Velasquez v. United States*, Civil No. 4:12–CV–251–Y, Criminal No. 4:10–CR–066–Y(6), 2012 WL 5451825, at \*5 (N.D. Tex. Nov. 8, 2012) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Where, as here, "the alleged failure of counsel occurs prior to a guilty plea, the movant must show that a suppression motion had merit, and that if the motion had been granted, he [or she] would not have pled guilty and would have insisted on his [or her] right to stand trial." *United States v. Mackay*, No. 3:97CR0208T(01), 3:04-CV-0413-D, 2007 WL 700895, at \*28 (N.D. Tex. 2007) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-60 (1985)).

---

[4] Petitioner also argues that the Federal Agents' alleged failure to comply with Rule 41(f)(1)(C) violated the Fourth Amendment to the United States Constitution. *See* Mot. 2, 9, 14, 16, 26. A ministerial violation of Rule 41 does not violate the Fourth Amendment. *See United States v. Thompson*, 263 F. App'x 374, 379 (4th Cir. 2008) (citing *United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006)). The Court therefore rejects Petitioner's Fourth Amendment argument.

9

Federal Rule of Criminal Procedure 41(f)(1)(C) provides:

> The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

Fed. R. Crim. P. 41(f)(1)(C).

> Rule 41 violations are essentially ministerial in nature and a court will grant a motion to suppress based on a failure to comply with its requirements only when the defendant demonstrates legal prejudice or that non-compliance was intentional or in bad faith. Prejudice, in this context, requires a defendant to show that because of the Rule 41 violation, law enforcement authorities subjected him to a search that might not have occurred had they followed the rule.

*Garcia v. United States*, Nos. EP-04-CA-447-DB, EP-98-CR-586-DB, 2007 WL 4234174, at *7 (W.D. Tex. Nov. 28, 2007) (citing *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. 1981)).

In the context of a motion to suppress predicated on an alleged violation of Federal Rule of Criminal Procedure 41(f), "[t]he defendant has the burden of proof in challenging the validity of the search warrant's execution." *See United States v. Neal*, 182 F. App'x 366, 371 (5th Cir. 2006) (citing *Marx*, 635 F.2d at 441).

The Court, having considered the Motion, Petitioner's Affidavit, and the testimony and exhibits introduced at the Evidentiary Hearing, concludes that Petitioner's claim fails for three independently sufficient reasons. First, Petitioner has failed to meet his burden of proof to demonstrate that the Federal Agents failed to provide him with a copy of the Search Warrant. Second, even assuming that the Federal Agents did fail to give Petitioner a copy of the search warrant, Petitioner has failed to establish prejudice, bad faith, or intent to flout Rule 41. Finally, the Court concludes that Counsel's decision not to file a motion to suppress was not professionally unreasonable.

### 1.   Petitioner has failed to demonstrate that the Federal Agents failed to provide him a copy of the Search Warrant

Petitioner has failed to demonstrate that the Federal Agents did not provide him a copy of

the Search Warrant. Petitioner's testimony at the Evidentiary Hearing was, for the following

reasons, less credible than that of Campa, Marquez, and Barraza.

First, Petitioner testified that he asked to see the Search Warrant on multiple occasions

prior to the interview with Campa and Marquez and renewed his request after the interview had

concluded, but did not ask to see the Search Warrant at any point during the interview. As noted

in the May 2014 Order, Petitioner made several highly incriminating statements during the

interview, including admissions that Petitioner "(1) downloaded several commercially available

child pornography videos onto his computer desktop; (2) knew the videos contained minors

involved in sexually explicit activity; (3) had been involved in the receipt and distribution of

child pornography for several years using a peer-to-peer file sharing program; (4) had secretly

filmed his students at school for years; and (5) was 'glad' the [Federal A]gents caught him as he

would 'otherwise be unable to stop.'" May 2014 Order 17 (internal quotation marks and citations

omitted); *accord* Mot. 22. Petitioner does not dispute that he made these statements to the

Federal Agents. *See* Mot. 22. It is difficult to believe that Petitioner would repeatedly demand to

see the Search Warrant, then immediately thereafter cease his protests and voluntarily give

numerous damning admissions, and then begin demanding to see the Search Warrant again after

the interview had concluded. In other words, Petitioner's willingness to confess serious crimes to

the Federal Agents casts doubt on his claim that he repeatedly challenged the Federal Agents'

alleged failure to comply with applicable police procedures.

Similarly, the Court also finds incredible Petitioner's testimony that he would not have

given these incriminating statements if the Federal Agents had produced a copy of the Search

Warrant. Petitioner did not testify why viewing the Search Warrant would have made him less

willing to cooperate with law enforcement. If that were true, it would mean that Petitioner freely

11

admitted to receiving, distributing, and producing child pornography when he had seen no evidence that the search of his residence was authorized, but that he would not have made those admissions if he had seen proof that the Federal Agents were legally permitted to search his home. Because Petitioner does not contest that the Search Warrant itself was both valid and properly obtained, *see* Mot. 2-3, 7-20, and because the Court has ruled that the search was lawful in all other respects, *see* May 2014 Order 9-12, 15-19, the Court sees no reason why reviewing the Search Warrant could possibly have reduced Petitioner's willingness to cooperate. That is, Petitioner would have this Court believe that he was *more* willing to make highly damaging confessions regarding his commission of child exploitation offenses when he believed the search was unauthorized than he would have been if the Federal Agents had complied with all applicable procedural rules. Because Petitioner's version of events makes little logical sense, the Court discredits Petitioner's testimony.

Additionally, Petitioner's testimony at the Evidentiary Hearing regarding how the Federal Agents conducted the search is not consistent with the account he gave in his affidavit. Petitioner avers in his affidavit that "[u]pon opening the door" for the Federal Agents, he "was rushed and physically knocked to the ground by several unidentified intruders with at least one of them pointing a gun at [his] head . . . The intruders entered forcefully and with guns drawn." Pet'r. Aff. 3. *Accord id*. at 7, 15-16, 33. Petitioner further avers that, during the search, "[o]ne guy even ha[d] his knees in my back forcing his weight on me." *Id*. at 16. At the Evidentiary Hearing, however, when questioned by the Government regarding how he ended up on the ground prior to being handcuffed, Petitioner did not mention that any law enforcement officer held a gun to his head or dug his or her knees into his back. He merely stated that the agents "took [him] to the ground." When pressed by the Government what he meant by that phrase, Petitioner merely

stated that the agents had used "force." Petitioner's omission of highly salient details from his testimony at the Evidentiary Hearing casts doubt on the truthfulness of his account of events.

By contrast, the Court found the testimony of Campa, Marquez, and Barraza to be highly credible. All three witnesses testified that the Federal Agents had, in fact, presented the warrant to Petitioner and that Petitioner had read it, and all three witnesses recounted a consistent version of events. Their demeanor suggested that their testimony was truthful. Petitioner did not impeach the officers or elicit any probative testimony on cross-examination that would cast doubt on their testimony. Indeed, Petitioner did not cross-examine Marquez or Barraza at all.

In particular, the Court finds Barraza's testimony that she observed Campa and Marquez slide a copy of the Search Warrant to Petitioner particularly persuasive. As a retiree who no longer works for law enforcement, and as an officer who worked for a state agency without a direct interest in the outcome of a federal prosecution, Barraza was particularly likely to testify truthfully regarding whether the Federal Agents presented the Search Warrant to Petitioner.

Thus, Petitioner has failed to carry his burden to show that the Federal Agents failed to provide him a copy of the Search Warrant. As a result, Petitioner has failed to show that, if Counsel had filed a motion to suppress pursuant to Rule 41, the motion would have succeeded. The Court therefore rejects Petitioner's ineffective assistance claim. *See Velasquez*, 2012 WL 5451825, at *5 (citing *Kimmelman*, 477 U.S. at 375).

### 2.      Petitioner has failed to show prejudice, bad faith, or intent

Even assuming arguendo that the Federal Agents never provided Petitioner a copy of the Search Warrant, Petitioner has still failed to prove that a motion to suppress would have been meritorious. As noted above, "a court will grant a motion to suppress based on a failure to comply with [Rule 41] only when the defendant demonstrates legal prejudice or that non-

13

compliance was intentional or in bad faith." *Garcia*, 2007 WL 4234174, at *7 (citing *Marx*, 635 F.2d at 441). For the following reasons, Petitioner has not demonstrated any of those elements.

First, Petitioner has failed to show prejudice. To show prejudice resulting from a Rule 41 violation, the "defendant must show that because of the violation . . . he [or she] was subjected to a search that might not have occurred or would not have been so abrasive had the rule been followed." *Marx*, 635 F.2d at 441. *Accord United States v. Jacobs*, 125 F. App'x 518, 522 (5th Cir. 2005). Petitioner presented no evidence at the Evidentiary Hearing that the search would not have occurred or would have been less abrasive if the Federal Agents had shown him the Search Warrant. Again, Petitioner does not contest that the Search Warrant itself was both valid and properly obtained, *see* Mot. 2-3, 7-20, and the Court has ruled that the search was lawful in all other respects, *see* May 2014 Order 9-12, 15-19, so allowing Petitioner to inspect the Search Warrant would not have exposed any defects in the Search Warrant that would have caused the Federal Agents to terminate or curtail the search.[5] Petitioner testified at the Evidentiary Hearing that he would not have given a statement to the Federal Agents if he had seen a copy of the Search Warrant, but he did not explain why seeing the Search Warrant would have decreased his willingness to confess. Moreover, this testimony is not credible for the reasons discussed in the previous section of this Order. Thus, Petitioner has failed to show that the search would not have occurred, or would have been less abrasive, if the Federal Agents had shown him the Search Warrant. *See Marx*, 635 F.2d at 441.

Nor has Petitioner showed that the Federal Agents acted in bad faith or intentionally

---

[5] Indeed, it is difficult to imagine how the search would have proceeded differently if the Federal Agents had complied with Rule 41(f)(1)(C) because the rule does not "require[] the executing officer to serve the warrant on the owner before commencing the search." *See Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004). *Accord United States v. Grubbs*, 547 U.S. 90, 98-99 (2006). The officer may instead "leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C).

violated Rule 41. In the absence of prejudice or a constitutional violation, suppression "is not appropriate if the officers concerned acted in the affirmative good faith belief that the warrant was valid and authorized their conduct." *United States v. Comstock*, 805 F.2d 1194, 1207 (5th Cir. 1986). Thus, where a law enforcement official acts under the erroneous but good faith belief that he or she is in fact executing a search warrant in a manner authorized by Rule 41, suppression is unwarranted. *See id*. at 1196 (deeming suppression unwarranted where executing officers erroneously believed in good faith that warrant was issued by a state court of record as required by Rule 41). A mere procedural blunder by law enforcement officials will not result in suppression. *See id*. at 1210. "In this circuit, . . . it is the defendant, not the government, who bears the burden of demonstrating intentional non-compliance by the searching officers." *Neal*, 182 F. App'x at 371.

Petitioner merely testified that he asked the Federal Agents to produce the Search Warrant and that they refused; he presented no evidence that the Federal Agents knew they were obligated to give Petitioner a copy of the Search Warrant, or that they consciously ignored or disregarded that obligation. *See Comstock*, 805 F.2d at 1196. Thus, Petitioner has failed to meet his burden to affirmatively demonstrate that the Federal Agents acted in bad faith or with intent to flout Rule 41. *See Neal*, 182 F. App'x at 371.

Because Petitioner has not shown prejudice, bad faith, or intent to violate Rule 41, a motion to suppress the evidence obtained during the search would have been unmeritorious. *See Garcia*, 2007 WL 4234174, at *7 (citing *Marx*, 635 F.2d at 441). Counsel therefore did not render ineffective assistance by failing to file one. *See Velasquez*, 2012 WL 5451825, at *5 (citing *Kimmelman*, 477 U.S. at 375).

### 3.    Counsel's decision not to file a motion to suppress was not professionally unreasonable

Additionally, Counsel's decision not to file a motion to suppress was not professionally unreasonable. When assessing an ineffective assistance claim, the court "must indulge a strong presumption" that defense counsel's conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101) (internal quotation marks omitted). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). In particular, "[t]he filing of pretrial motions, including a motion to suppress, falls within the range of trial strategy." *United States v. Strahan*, Criminal Action No. 03-50105-01, Civil Action No. 06-1002, 2007 WL 2088610, at *5 (W.D. La. July 20, 2007) (citing *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)) (rejecting § 2255 petitioner's ineffective assistance claim predicated on counsel's alleged failure to move to suppress evidence obtained in violation of Rule 41).

Counsel acted reasonably in concluding that a suppression motion, even if nonfrivolous, was not a fruitful avenue to explore. A survey of appellate and district court cases in the Fifth Circuit indicates that motions to suppress evidence allegedly obtained in violation of Rule 41 rarely result in suppression. *See Neal*, 182 F. App'x at 371-72; *Jacobs*, 125 F. App'x at 522-23; *United States v. Davis*, 226 F.3d 346, 352 (5th Cir. 2000); *United States v. Richardson*, 943 F.2d 547, 549-51 (5th Cir. 1991) (reversing district court's suppression of evidence obtained in violation of Rule 41); *United States v. Charles*, 883 F.2d 355, 356-57 (5th Cir. 1989); *Comstock*,

16

805 F.2d at 1196, 1199-1210; *Marx*, 635 F.2d at 440-41; *Garcia*, 2007 WL 4234174, at *7;

*United States v. Tomlinson*, Civil Action No. 07-50033-01-06, 2007 WL 4125432, at *11 (W.D.

La. Nov. 19, 2007); *United States v. Chambers*, Criminal No. 1:07cr15, 2007 WL 2872406, at

*1-2 (S.D. Miss. Sept. 27, 2007). *But cf. United States v. Niemann*, No. 98-50581, 1999 WL

1328080, at *1, *3-5 (5th Cir. 1999) (reversing district court's denial of § 2255 motion and

remanding for further proceedings where record contained some facts that search violated Rule

41).

   Both Gibson and Kimmelman testified at the Evidentiary Hearing that they believed that

filing a motion to suppress predicated solely on an alleged Rule 41 violation would in all

likelihood be a waste of time, resources, and negotiating power. *See Strahan*, 2007 WL 2088610,

at *5 (citing *Schwander*, 750 F.2d at 500; *Murray*, 736 F.2d at 283) (ruling that counsel's

decision not to move to suppress evidence allegedly obtained in violation of Rule 41 amounted

to reasonable trial strategy given unlikelihood of motion's success). Furthermore, Gibson in

particular testified that his decision not to file a motion to suppress was a calculated one. Gibson

believed that, given the severity of the charges in the Indictment, the best strategy was to

cooperate with the Government in the hopes of obtaining a favorable plea agreement. Gibson

thought that filing a motion to suppress would have reduced the Government's willingness to

negotiate with Petitioner. Furthermore, declining to file a motion to suppress in the hope of

obtaining favorable treatment from the Government can amount to a reasonable trial strategy.

*See Payton v. United States*, Civil Action No. 1:08cv101, 2010 WL 3257664, at *3 (E.D. Tex.

July 1, 2010), *report and recommendation adopted by* 2010 WL 3257661 (E.D. Tex. Aug. 16,

2010) ("Movant made an informed decision to forgo a suppression hearing in order to receive the

maximum points for acceptance of responsibility. Thus, counsel's decision not to file a motion to

suppress evidence in this case was reasonable trial strategy and not deficient performance.").

Even if Gibson's mitigation strategy was arguably unsuccessful in light of Petitioner's ultimate sentence,[6] the Court cannot conclude that Gibson's decision was "so ill chosen" as to "permeate[] the entire trial with obvious unfairness." *See Jones*, 287 F.3d at 331 (quoting *Garland*, 717 F.2d at 206). Because Gibson's strategy to cooperate with the Government instead of filing a pre-trial suppression motion was a reasonable, calculated decision, the Court cannot "second-guess counsel's decisions through the distorting lens of hindsight." *See Morrow v. Dretke*, 99 F. App'x 505, 509 (5th Cir. 2004). *Accord Pulido v. Thaler*, No. EP–09–CV–462–KC, 2011 WL 1212255, at *14 (W.D. Tex. Jan. 28, 2011) (citations omitted), *report and recommendation adopted by* 2011 WL 1212247 (W.D. Tex. Mar. 28, 2011) ("Counsel cannot be faulted for employing a strategy that, with the benefit of hindsight, may have proven to be a miscalculation.").

Thus, because Counsel's decision not to file a motion to suppress the evidence allegedly obtained in violation of Rule 41 was not professionally unreasonable, the Court rejects Petitioner's ineffective assistance claim. *See Velasquez*, 2012 WL 5451825, at *5 (citing *Kimmelman*, 477 U.S. at 375).

## C.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, Petitioner must obtain a certificate of appealability before appealing this Order. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997). "A certificate of appealability may issue . . . only if the

---

[6] The Court notes, however, that contrary to Gibson's testimony that Petitioner "couldn't have come out any worse than [h]e did," Gibson successfully persuaded the Government to dismiss three of the five counts of the Indictment, thereby eliminating the possibility that Petitioner could receive between three and five consecutive sentences instead of just two. *See* Plea Agreement 1; Indictment 1-4.

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336. "A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument." *See United States v. Peralta-Ramirez*, Criminal No. H-04-0150-06, Civil Action No. H-07-4582, 2008 WL 4630369, at *12 (S.D. Tex. Oct. 16, 2008) (citing *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)).

For the reasons described above, jurists would not debate the merits of Petitioner's claim that Counsel rendered ineffective assistance by failing to file a motion to suppress based on the Federal Agents' alleged failure to provide Petitioner a copy of the Search Warrant. Therefore, the Court sua sponte denies Petitioner a certificate of appealability as to any issue raised in the Motion.[7] *See id.* (citing *Alexander*, 211 F.3d at 898).

## III.   CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 126, EP-10-CR-2736-KC-1, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the corresponding civil action, EP-13-CV-215, is hereby **DISMISSED WITH PREJUDICE**. The Clerk shall close the civil case. The Court shall issue a final judgment separately.

**IT IS FURTHER ORDERED** that the Court **DENIES** Petitioner a certificate of appealability.

---

[7] The Court, in the May 2014 Order, denied Petitioner a certificate of appealability as to his other ineffective assistance claims. May 2014 Order 26.

19

**SO ORDERED**.

**SIGNED this 7th day of July, 2014.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE